STATE of North Dakota, Plaintiff
and Appellee,

v.

Carmen RODRIGUEZ, Defendant
and Appellant.

Crim. No. 890319.

Supreme Court of North Dakota.

April 12, 1990.

John T. Goff, Asst. State's Atty., Fargo, for plaintiff and appellee.

C. Charles Chinquist, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Carmen Rodriguez appealed from judgment finding him guilty of one count of possession of a controlled substance with intent to deliver. We affirm.

On March 29, 1989, Carmen Rodriguez was stopped by Fargo, North Dakota, law enforcement officials while driving a 1970 blue Chevrolet El Camino with Minnesota license plates "222 AZT," and was placed under arrest on the basis of an outstanding felony arrest warrant in South Dakota. A search of Rodriguez disclosed that he was in possession of approximately $2,388. Moreover, a subsequent impound inventory search of the vehicle revealed an envelope lying on the floorboard behind the passenger-side seat containing a white powdery substance later determined to be one ounce of cocaine. The envelope, which was partially torn, bore the name "Carmen" and the zip code "58047." Although Rodriguez was identified by a Texas driver's license during the stop, he informed the officers of his local address in Horace, North Dakota. Horace has a zip code of 58047.

Rodriguez was charged with one count of possession of a controlled substance with intent to deliver, a class A felony, in violation of NDCC §§ 19–03.1–07 and 19–03.1–23. At the preliminary hearing, Officer Donn Weaver of the Fargo Police Department testified as to the events leading to the stop and subsequent arrest of Rodriguez. Officer Weaver testified that on March 29, 1989, he was involved in the surveillance of a Moorhead, Minnesota, residence in joint cooperation with the Moorhead Police Department. The residence was under observation by the authorities for alleged controlled substance violations. Officer Weaver testified that a man was observed arriving at the residence in the El Camino. A registration check on the El Camino was requested by the Fargo officers from the Clay County, Minnesota, sheriff's department. Officer Weaver stated that he believed the department's dispatcher relayed information that Carmen Rodriguez was the registered owner of the vehicle, and that an unconfirmed warrant for his arrest was outstanding in South Dakota. After the vehicle left the Moorhead residence, it was followed and eventually stopped in the city of Fargo. The officers stopped the vehicle to determine whether or not the driver was the subject of the South Dakota warrant. The driver, identified as Rodriguez, was eventually arrested and the envelope containing the cocaine was discovered during the ensuing inventory search of the vehicle. Finally, Officer Weaver testified that, relying on his law-enforcement experience, in his opinion, one ounce of cocaine is a quantity which is larger than that intended for personal use. The county court for Cass County found probable cause to believe that the offense charged in the information was committed by Rodriguez and he was bound over to the district court for trial.

Rodriguez's counsel subsequently made a motion in the district court to suppress all of the evidence derived by the law enforcement officers on the basis of an "illegal stop." At the hearing on his motion to suppress, Carmen Rodriguez testified that he never owned a 1970 blue El Camino with Minnesota license plates "222 AZT." Moreover, Rodriguez's counsel entered into evidence a certified copy of a Minnesota vehicle registration document indicating that the El Camino in issue was registered

to Margarita Alonzo Rodriguez on the date of March 29, 1989. Margarita Alonzo Rodriguez is not related to Carmen Rodriguez. The district court granted Rodriguez's motion to suppress at close of the evidence because the officers did not have an articulable and reasonable suspicion to stop the El Camino.

The district court subsequently granted a motion by the State to reopen the hearing concerning Rodriguez's motion to suppress. The State presented evidence through the testimony of Faith Opp, the Clay County Sheriff's Department dispatcher who received the registration request in question. Opp testified that her radio dispatch to the surveillance officers indicated that the El Camino was registered to Margarita Alonzo Rodriguez, and that the National Crime Information Center [NCIC] listed the vehicle as "affiliated" with Carmen Rodriguez. Opp informed the officers that the NCIC information also indicated that there was an outstanding, "unconfirmed" felony arrest warrant from South Dakota for Carmen Rodriguez. Opp further testified that it is typical to enter vehicles and individuals together in law enforcement computer reporting systems when the vehicle is used in a felony and, accordingly, that dispatches do not necessarily contain only registration information. Finally, Opp testified as to the warrant confirmation procedure, and to the fact that she provided information to the Fargo Police Department which would enable it to confirm the outstanding South Dakota arrest warrant. After Opp's testimony, the district court revoked its earlier order to suppress, concluding that the officers had an articulable and reasonable suspicion to make an investigative stop of the vehicle.

During the jury trial, the State submitted police testimony concerning the surveillance of the Moorhead residence, the investigative stop of Rodriguez, the amount of money seized from Rodriguez upon his arrest, and the subsequent impound inventory search which revealed the envelope containing a powder believed to be cocaine. A forensic chemist from the office of the State Toxicologist testified that the seized substance was, in fact, approximately one ounce of cocaine. The State entered further police opinion testimony that one ounce of cocaine is an amount larger than that intended for personal use, and that the quantity reflected an intent to deliver. The State also called Margarita Alonzo Rodriguez who testified that the El Camino registered to her had been sold to Carmen Rodriguez prior to March 29, 1989. Finally, the State entered into evidence the cocaine in the partially torn envelope and the money taken from Rodriguez. Rodriguez rested immediately after the State had presented its case. The case was subsequently submitted to the jury and a guilty verdict was returned.

Rodriguez raises a number of issues on appeal. First, Rodriguez argues that the district court erred in failing to grant his motion to suppress. Second, Rodriguez contends that the trial court erred in failing to grant his motion for a mistrial as a result of an improper question asked by the prosecutor during trial. Rodriguez's third argument is that the trial court improperly instructed the jury as to the essential elements of the offense charged and a lesser-included offense. Finally, Rodriguez contends that the evidence was insufficient to support the guilty verdict. We consider Rodriguez's arguments separately.

## I. MOTION TO SUPPRESS

Initially, Rodriguez contends that the district court erred in denying his motion to suppress when it found that the Fargo officers had an articulable and reasonable suspicion to make an investigative stop of the El Camino. Alternatively, Rodriguez argues that even if there was a sufficient basis for the stop, the officers could only briefly detain him while they took steps to confirm the South Dakota arrest warrant. Rodriguez claims he was arrested without a confirmation of the warrant and, as a result, all of the evidence subsequently seized by the officers should have been suppressed.

█ While Rodriguez's alternative argument is interesting, we note that it was not raised before the district court in the hear-

ings on his motion to suppress. The only suppression issue raised by Rodriguez and determined by the district court was whether the police made an "illegal stop." The record does not reflect any argument by Rodriguez regarding whether there was sufficient probable cause for the officers to make an arrest on the basis of the unconfirmed warrant. As a result, the State presented no evidence on whether the warrant had been confirmed by the officers. It is well settled that issues not raised before the trial court, including constitutional issues, will not be considered on appeal. *State v. Potter*, 452 N.W.2d 71 (N.D. 1990); *State v. Prigge*, 437 N.W.2d 520 (N.D.1989); *State v. Miller*, 388 N.W.2d 522 (N.D.1986). Consequently, we will focus our analysis on the question of whether or not the officers had a proper basis for making an investigative stop.[1]

▇▇ An officer must have an articulable and reasonable suspicion that a motorist has violated or is violating the law in order to make a legal investigative stop of the vehicle. *State v. Beyer*, 441 N.W.2d 919 (N.D.1989); *State v. Geiger*, 430 N.W.2d 346 (N.D.1988). The factual basis for stopping a vehicle need not arise from the officer's personal observations or knowledge, but may arise by information acquired by the officer from another person. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Thus, it has been held that a radio "flyer" from another jurisdiction, which indicated the desire of law enforcement officials to question an individual with regard to a crime, justified an investigatory stop of the person's vehicle and a brief detention of the individual to check identification and pose questions. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). *See also*, C. Whitebread, *Criminal Procedure* § 9.03(2) [sources of information other than direct knowledge by officer can form basis for articulable and reasonable suspicion; police are entitled to rely on notices and flyers from other jurisdictions in making investigatory stops]. *Accord Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) [vehicle investigatory stop is reasonable under fourth amendment where there are articulable and reasonable suspicions that either the vehicle or an occupant is subject to seizure for violation of law].

▇▇ In the instant case, Fargo law enforcement officers observed a lone male in an El Camino arrive at a residence under surveillance. After requesting a registration check, the officers received a radio dispatch indicating that Carmen Rodriguez was affiliated with the automobile and that there was an unconfirmed felony warrant for his arrest in South Dakota. Following the receipt of this information, the officers observed the same male leave the residence in the suspect vehicle. Reviewing the dispatched information, we believe that the outstanding arrest warrant, albeit unconfirmed,[2] was sufficient to give the officers an articulable and reasonable suspicion to make an investigatory stop of the vehicle and to briefly detain the driver for the

1. Peace officers may arrest a person without an arrest warrant upon *probable cause* to believe that the person is the subject of another State's arrest warrant for, among other things, commission of a crime punishable by imprisonment for a term exceeding one year. NDCC § 29–30.3–04. In this instance the information from the dispatcher revealed that Rodriguez was the subject of a felony warrant from South Dakota. Without determining whether or not the information met the higher standard of probable cause to arrest Rodriguez [*Cf. State v. Mische*, 448 N.W.2d 412 (N.D.1989) ], that information surely met the lesser standard of articulable suspicion that the motorist violated the law which is sufficient to entitle the officer to make a legal investigative stop of the vehicle.

2. We do not believe that the officers had to actually confirm the outstanding warrant prior to making the investigatory stop. Such an argument would, in essence, require law enforcement officers to have an "absolute" suspicion that a person has violated the law, as opposed to a "reasonable and atriculable" suspicion. Moreover, law enforcement officers called upon to aid other officers in executing arrest warrants by means of radio dispatches are entitled to assume that the officer requesting aid offered a magistrate information to support an assessment of probable cause to arrest. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Thus, law enforcement officers must be allowed to rely upon information received from other officers.

purpose of identification and questioning. *United States v. Hensley, supra.* Therefore, we conclude that the district court did not err in denying Rodriguez's motion to suppress based upon an "illegal stop."

## II. MOTION FOR MISTRIAL

At trial, Margarita Alonzo Rodriguez testified that the El Camino registered to her had been sold to Carmen Rodriguez prior to March 29, 1989. During the questioning, the State's Attorney asked Margarita whether Carmen Rodriguez would be incorrect if he testified at an earlier hearing that he never owned the blue El Camino. At the time the question was asked, Carmen Rodriguez had not taken the witness stand to testify. Moreover, Carmen Rodriguez was not expected to give any testimony during trial. Before the question was answered, counsel for Rodriguez made a timely objection which was sustained by the trial court. Rodriguez's counsel also moved for a mistrial due to the prejudicial effect of the improper question. The trial court noted that the question was improper impeachment of Rodriguez by the prosecution but denied the motion for a mistrial stating: "I don't think that there's been any serious enough error here to justify a mistrial." Rodriguez's counsel did not request the trial court to give the jury a cautionary instruction with regard to the prosecution's allegedly prejudicial question.

 The general rule is that the granting of a mistrial is an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings of the trial which makes it evident that further proceedings would be productive of manifest injustice. *State*

*v. Carr,* 346 N.W.2d 723 (N.D.1984). Furthermore, when defense counsel moves for a mistrial because of the prejudicial effect of the defect or occurrence, counsel must ordinarily ask the trial court to give the jury a cautionary instruction in order to properly preserve the question for appellate review. *State v. Welch,* 426 N.W.2d 550 (N.D.1988). The failure to request an instruction waives the objection to the allegedly prejudicial error. *Id.*

 While defense counsel entered a timely objection to the prosecution's impeachment, he did not request that the trial court issue a cautionary instruction to the jury. Accordingly, the issue has not been properly preserved for review. Furthermore, we do not believe the prosecution's actions rose to the level of obvious error. Rule 52(b), NDRCrimP.

## III. JURY INSTRUCTIONS

 During trial, counsel for Rodriguez requested that a level of intent of "knowingly" be included in the jury instructions as an essential element of the offense charged, possession of a controlled substance with intent to deliver, and the lesser-included offense of possession of a controlled substance. The district court denied the requested instruction.

When Rodriguez was arrested and a criminal complaint was filed against him by the State, NDCC § 19–03.1–23(1) provided in part:

> "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance...."[3]

---

3. The 1989 North Dakota Legislative Assembly amended NDCC § 19–03.1–23 to include a culpability requirement of "willfully." The effective date of the amendment was July 1, 1989. In the instant case, Rodriguez was arrested for the offense on March 29, 1989, and the state filed its criminal complaint on March 30, 1989. The jury trial was held in October of 1989. Statutes generally are not retroactive unless expressly declared so by the Legislature. *See* NDCC § 1–02–10; *State v. Kaufman,* 310 N.W.2d 709 (N.D.1981). In *State v. Cummings,* 386 N.W.2d 468, 472 (N.D.1986), we declined to follow *Kaufman* insofar as it applied to amelio-

rating penal statutes, and concluded that "unless otherwise indicated by the Legislature, an ameliorating amendment to a criminal statute is reflective of the Legislature's determination that the lesser punishment is the appropriate penalty for the offense." However, that decision and the authorities on which it relies deal with circumstances in which the penalty for the commission of a crime is reduced, and not those instances in which, as here, an additional element has been added to the definition of the offense. Rodriguez did not argue to this Court that we should apply the *Cummings* rationale to

This Court has held that § 19–03.1–23(1) is a strict-liability offense requiring no proof of guilty knowledge. *State v. Rippley*, 319 N.W.2d 129 (N.D.1982); *State v. Morris*, 331 N.W.2d 48 (N.D.1983). The issue of culpability was further considered in the recent case of *State v. Michlitsch*, 438 N.W.2d 175 (N.D.1989). In *Michlitsch*, we confirmed that § 19–03.1–23(1) was a strict-liability offense, but noted that a defendant could assert, in the nature of an "affirmative defense," that he or she "unwittingly or unknowingly" possessed the controlled substance. However, we concluded that the defendant had the burden of proving the affirmative defense by a preponderance of the evidence, and that the State was not required to prove the nonexistence of the defense. *Id.* Once the defendant has submitted the requisite evidence in support of the defense, he or she would be entitled to an instruction in the nature of that of an affirmative defense. *Id.*

In the instant case, Rodriguez did not request an affirmative-defense instruction on the grounds that he "unknowingly or unwittingly" possessed the cocaine; nor did he present any evidence in support of such a defense. Rather, Rodriguez sought to make "knowingly" an essential culpability element under § 19–03.1–23 contrary to our decisions in *Morris* and *Michlitsch*. The district court did not err in denying Rodriguez's proposed jury instructions.

### IV. SUFFICIENCY OF THE EVIDENCE

Rodriguez's final argument is that there was insufficient evidence presented by the State to support the guilty verdict. The standard of review which this Court utilizes in cases challenging the sufficiency of the evidence to sustain a conviction is well settled:

"We do not weigh or resolve conflicts in the evidence, nor do we judge the credibility of witnesses; those matters are for the trier of fact. We look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to warrant a conviction." *State v. Haugen*, 448 N.W.2d 191, 196–97 (N.D. 1989).

*Accord State v. Olson*, 372 N.W.2d 901 (N.D.1985); *State v. Hartsoch*, 329 N.W.2d 367 (N.D.1983).

In the instant case, all the elements of the crime of possession of a controlled substance with intent to deliver were established by the State's evidence. To summarize, the State entered into evidence police testimony concerning the investigative stop of the El Camino, the arrest of Rodriguez, and the subsequent inventory search of the vehicle which revealed a partially torn envelope containing one ounce of cocaine. The testimony indicated that the envelope bore the name "Carmen" and the Horace zip code of "58047." Moreover, there was testimony that Rodriguez informed the officers of his current address in Horace during the investigative stop. Margarita Alonzo Rodriguez testified that the El Camino had been sold to Carmen Rodriguez and that she no longer owned the vehicle. Finally, there was police testimony indicating one ounce of cocaine is a quantity which is larger than that intended for personal use, and that Rodriguez was arrested with $2,388 in his possession. Reviewing the evidence presented in a light most favorable to the verdict, we conclude that there was substantial evidence to demonstrate that Rodriguez was in possession of the seized cocaine, and that he possessed it with an intent to deliver.

The judgment of conviction of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

circumstances other than the amendment of statutes which reduce the penalty for the commission of an offense, and we decline to consider the application of that rationale in this case in the absence of research and argument by the parties thereon. Because the Legislature did not give retroactive effect to the amendment of § 19–03.1–23, we apply the former version of the statute.