**STATE of North Dakota, Plaintiff and Appellant,**

**v.**

**Michael T. ZIMMERMAN, Defendant and Appellee.**

**Cr. No. 940209.**

Supreme Court of North Dakota.

Feb. 28, 1995.

Tom M. Henning, Asst. State's Atty., Dickinson, for plaintiff and appellant.

Dennis W. Lindquist of Murtha & Murtha, Dickinson, for defendant and appellee.

SANDSTROM, Justice.

The State appeals an order suppressing evidence that Michael Zimmerman unlawfully possessed dead deer. The trial court ruled there was no valid consent to search the Zimmerman farmstead. We address the issue of who has common authority over premises to consent to a search, and reverse the order.

### I

A North Dakota Game and Fish Department warden obtained a search warrant for a building on the Michael Zimmerman farm, on November 22, 1993. Based on a tip, the warden believed three untagged whitetail deer could be found in a steel building on the farmstead. The warrant stated the warden had reason to believe the deer were unlawfully possessed, in violation of N.D.C.C. § 20.1–05–02.

The warden, accompanied by another warden, arrived at the Zimmerman farmstead and served the warrant on Michael Zimmerman's mother, Minerva Zimmerman. Minerva Zimmerman told the wardens that Michael did not live there, but lived in a trailer on the east end of the farmstead. Fabian and Minerva Zimmerman live on the west end of the 120–acre farmstead. The steel building and other dairy buildings are located approximately fifty yards from their home. The farmstead has been in the Zimmerman family for generations. In 1993, Fabian and Minerva Zimmerman deeded the farmstead to Michael Zimmerman and his wife. Fabian and Minerva Zimmerman excluded the land on which their house sits from the transfer.

After serving Minerva Zimmerman with the warrant, the wardens began searching the steel building. Evidence of the deer was found inside: blood, hair, tissue samples, and rope used to hang the carcasses. The deer were not found.

While one warden collected the evidence, the other went outside and was approached by Fabian Zimmerman, who asked if he had found the deer yet. The warden replied they had not. Fabian Zimmerman told the warden the deer were in the milking parlor. He led the wardens to a nearby building, opened the door, and led the wardens inside. Once inside, he led the wardens down a hallway and turned on the light. He took the wardens around the corner to where the deer were hidden under a tarp. The wardens seized the deer.

Michael Zimmerman moved to suppress the evidence as an illegal search. The State countered, asserting the search was reasonable because Fabian Zimmerman consented to it.

The State did not rely on the search warrant, but argued Fabian Zimmerman validly consented to the search of the milking parlor where the deer were found. The trial court concluded Fabian Zimmerman could not validly consent, and granted the motion to suppress.

The trial court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06(1). This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. 29–28–07(5). The appropriate statement of the prosecutor accompanied the notice of appeal. The appeal is timely under Rule 4(b), N.D.R.App.P.

### II

#### A

A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994); *State v. Everson*, 474 N.W.2d 695, 704 (N.D.1991). We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact. *Thompson*. Questions of law are fully reviewable. *State v. One Black 1989 Cadillac*, 522 N.W.2d 457, 460 (N.D.1994); *see*

also Salter v. North Dakota Dep't of Transp., 505 N.W.2d 111, 112 (N.D.1993) (whether officer has reasonable and articulable suspicion motorist is violating the law is a question of law fully reviewable on appeal).

In this case, the search of the building could potentially have been reasonable on several bases: (1) the search warrant could have covered the building in which the deer were found; (2) Michael Zimmerman could have consented to the search; (3) Fabian Zimmerman could have had actual common authority over the building where the deer were found; (4) the wardens could have reasonably believed Fabian Zimmerman had common authority. The State, however, concedes the search warrant did not cover the building in which the deer were found, and Michael Zimmerman did not consent to the search. Our attention focuses on whether the wardens could have reasonably relied on Fabian Zimmerman's consent.

### B

■ The Fourth Amendment to the United States Constitution protects against unreasonable searches. A reasonable search occurs when an appropriate person consents to the search. State v. Swenningson, 297 N.W.2d 405, 407 (N.D.1980). This does not require the person against whom the evidence is used to consent to the search. Rather, it is reasonable if consent is given by a third party who possesses common authority over, or other sufficient relationship to, the premises. Swenningson. This Court explained "common authority" involves joint access or control and is not limited to ownership of the premises:

> " 'Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the

risk that one of their number might permit the common area to be searched.' "

Swenningson (quoting United States v. Matlock, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242, 250 n. 7 (1974)) (internal citations omitted).

The trial court based its order on Fabian Zimmerman's lack of ownership interest in the milking parlor and the wardens' failure to serve the search warrant on Michael Zimmerman, or at least to request his permission to search the milking parlor. The trial court held common authority typically involves only a room in a single residence or dwelling, not in a farmstead.

■ The lack of ownership interest in the premises to be searched does not determine the validity of the search. Swenningson, see also United States v. Duran, 957 F.2d 499, 503 (7th Cir.1992) (holding lack of ownership interest in separate farmhouse by one spouse irrelevant to validity of the search, as common authority does not rest upon property law).

■ The trial court also emphasized the wardens' failure to serve Michael Zimmerman with the search warrant for the building and his failure to give permission for the wardens to search the milking parlor. The validity of the warrant is not at issue. It covered a different building on the farmstead. Fabian Zimmerman's affirmative actions after the failure to serve Michael Zimmerman led to the discovery of the deer. These affirmative actions are at issue. See State v. Kunkel, 406 N.W.2d 681 (N.D.1987).

■ The failure of the wardens to obtain permission from Michael Zimmerman to search is also irrelevant to valid consent. Once a third party validly consents to the search, law enforcement officials may proceed with the search, regardless whether the possessor is present and objects. Kunkel at 682 n. 1.

■ Common authority is based upon mutual use of the premises by persons generally having control over or joint access to the property for most purposes. Kunkel at 683. The critical inquiry is whether Fabian Zimmerman had sufficient authority over or rela-

tionship to the milking parlor to consent to the wardens' entry. *Kunkel.* Common authority is not restricted to a single residence or dwelling. If the third party has control over or joint access to any property, common authority exists. *See Duran* (common authority over a separate farmhouse); *United States v. Evans,* 27 F.3d 1219 (7th Cir.1994) (common authority over separate garage housing defendant's business); *United States v. Baswell,* 792 F.2d 755 (8th Cir.1986) (common authority over vacation home by maintenance worker).

 At the hearing, the State focused on the elder Zimmerman's actions in leading the wardens, without request, to the deer. The testimony elicited proved Fabian Zimmerman did not own the buildings, was not involved in the dairy operation, and derived no income from it. There is sufficient competent evidence supporting the trial court's finding Fabian Zimmerman actually lacked common authority; and the finding is not against the manifest weight of the evidence.

### C

In *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the United States Supreme Court held the Fourth Amendment was not violated when law enforcement officers received consent to search from a third party who did not *actually* have common authority. The Supreme Court based this conclusion on the reasonableness of the officers' actions:

> "It is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable."

*Rodriguez,* 497 U.S. at 185–86, 110 S.Ct. at 2800, 111 L.Ed.2d at 159.

 The Supreme Court concluded a valid consent search may be undertaken if officers reasonably believed the third party had authority over the premises.

> "[The] determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid."

*Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. at 2801, 111 L.Ed.2d at 161. Under the Fourth Amendment, therefore, valid consent to search may be given by parties with actual or apparent common authority, when viewed from the officer's perspective.

The trial court held the wardens could not rely on Fabian Zimmerman's common authority because the wardens had gone to the wrong residence with the warrant. The court held the wardens should have asked Michael Zimmerman's permission or obtained another search warrant based on Fabian Zimmerman's statements.

 Law enforcement officials do not have to obtain consent from the owner of the property. A valid third party's consent is sufficient. *Swenningson.* The factual determinations of a magistrate issuing a warrant or an officer conducting a search do not have to be correct, only reasonable. *Rodriguez,* 497 U.S. at 185–86, 110 S.Ct. at 2800, 111 L.Ed.2d at 159. The wardens had good reason to believe Fabian Zimmerman had common authority over the farm. The wardens were told Michael Zimmerman lived on the other end of the farmstead, approximately a quarter-mile away in a trailer, but were never told Fabian Zimmerman was not involved in the dairy operation or otherwise lacked authority over the farm. Tracks in the snow led from the Fabian and Minerva Zimmerman house to the buildings. Fabian Zimmerman led the wardens from the steel building to the milking parlor, opened the door, led them down a hallway, turned on the light, and took the wardens around a corner to where the deer were located under a tarp. Fabian Zimmerman lived on the farmstead, which had been in the family for generations. Only recently had the farm been passed on to the next generation. In the conveyance to his son, Fabian Zimmerman retained a part of the farmstead for his home.

The wardens were presented with what looked like the typical family farmstead. The home and farm buildings were within fifty yards of each other. The son and wife lived on the farmstead as well, but in a separate trailer a quarter-mile away. It is reasonable for officials to conclude the patriarch of the family farm would have authority over the farmstead. We recognize family farms are prevalent in North Dakota, and it is quite common for multiple generations to be involved in their operations.

The facts available to the wardens support a finding of apparent authority. To the extent the trial court held the wardens could not reasonably believe Fabian Zimmerman had authority to consent, the decision is contrary to the manifest weight of the evidence. The wardens did not act unreasonably in searching the milking parlor.

### III

The order of the trial court is reversed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.